ELDRIDGE HAWKINS LLC
Attorney At Law
Attorney ID No. 214731967
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018
Tel: (973) 676-5070 Fax: (973) 676-7356
Email: hwklaw@aol.com
Attorneys for: PLAINTIFF

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
7 Glenwood Avenue, Suite 400
East Orange, NJ 07017
Phone (973) 419 2325  Fax (973) 669 3269
Attorney Id :021212005
portillalaw@gmail.com
Attorney for: PLAINTIFF

| | |
|---|---|
| ARTULDE POINT DU JOUR<br><br>PLAINTIFF<br><br>v<br><br><br><br>FLIX BUS SE OBA GREYHOUND BUS COMPANY SMACK JERI-IN, HEAD DOE, JOHN DOES (1-10), HARRY ROES (1-10)<br><br>DEFENDANTS | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>CASE #: 2:25-cv-02601-BRM-SDA<br><br><br><br>**BRIEF IN SUPPORT OF MOTION TO VACATE ORDER OF DISMISSAL DATED 10/21/2025 AND IN OPPOSITION TO DEFENDANT' MOTION TO DISMISS** |

**PRELIMINARY STATEMENT**

Cecile D. Portilla, Esquire has been assisting Eldride Haawkins, Esquire with his

matters prior to and especially after he disclosed to the various Courts including the

1

District Court that he has developed Neuropathy in his hands and had requested accommodation.

Attorney Hawkins advised the undersigned that he DID NOT receive the Original Court Notification advising that a motion to dismiss the Complaint was filed in this case.

It is said that the "[*t*]*he powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex ... relations and the protection of rights can demand*" this motion to vacate the dismissal of the plaintiff's complaint should be granted and plaintiff allowed to oppose the defendants' Motion dismissing her Complaint.

## STATEMENT OF FACTS

Plaintiff relies on Statement of facts of her Amended Complaint as her statement of facts as if set forth at length herein. Plaintiff also adds the following:.

*On 10/21/2025, while assisting Eldridge Hawkins in drafting a brief in support of a motion to be allowed to file an opposition Nunc Pro Tunc, the undersigned logged into the Pacer to view documents when she saw that the plaintiff's matter was terminated that same date.* Because a motion to vacate the dismissal was now required and Ms. Portilla was assisting Attorney with a trial in Bergen County when the matter was dismissed, this motion to vacate the Order dated 10/21/2025 is being filed on this date.

## SUPPLEMENTAL FACTS TO SUPPORT THE MOTION TO VACATE THE ORDER OF DISMISSAL

Cecile D. Portilla, Esquire has been assisting Eldride Haawkins, Esquire with his matters prior to and especially after he disclosed to the various Courts including the District Court that he has developed Neuropathy in his hands and had  requested accommodation.

On September 4, 2025, the undersigned attorney hand delivered a letter to the District Court Clerk with multiple attached exhibits.. The letter was entitled  "**[a] matter of Public Concern.**" The letter with Exhibits was uploaded to Pacer by the District Court Clerk on 9/5/2025 under Case # 2:24-cv-08908-JKS. (**Matter of Public Concern Letter with Exhibits A-H** )

The letter with attachments identified the undersigned as a Whistle Blower against Government Agents who has been having *very strange problems* **o**n the eCourts as well as problems with the District Court. The letter also explained that Elridge Hawkins was having problems with his Pacer account and outlined other problems related to Court documents that the Whistle Blower Attorney had observed. (**Matter of Public Concern Letter with Exhibits A-H** ).

Eldridge Hawkins, Esquire had assisted the undersigned with matters related to her whistle Blowing.  Court administration has been advised that unsanctioned interferences are occurring *directly* on Court sites in New Jersey as some of the acts noted cannot be done from an attorney's access code. The Exhibits also highlighted that Eldridge Hawkins

3

Esquire was also experiencing interference with documents filed on the Court site and was having problems with his receipt of Court Notifications.

Attached as **Exhibit G** to the Matter of Public Concern letter is a Certification filed by Eldridge in an Appellate Court matter wherein he states at **paragraph 35**

> "*Ms. Portilla stated in her communication to the Supreme Court that multiple Court notifications (that she perceived to be <u>blocked</u> WERE NOT coming through to us*"

**(Exhibit G-to Matter of Public Concern Letter-Certification of Eldridge Hawkins dated June 12, 2025-Emphasis Added)**

In **paragraph 41** of his certification Eldridge Hawkins also stated:

> " *[[a]t my last Court appearance on June 9, 2025 I complained to Judge Critchley that I keep my own diary and DID <u>NOT HAVE NOTICE</u> via eCourts about that matter or the trial that the Judge told me was scheduled for Monday June 16, 2025.*"

**(Exhibit G-to Matter of Public Concern Letter- Certification of Eldridge Hawkins dated June 12, 2025)**

Not attached to the communication to the District Court, but relevant to our need for an equitable resolution of out motion is a letter that was filed with the Superior Court on January 9, 20255 that was addressed to the Hon. Rober Gardber, JSC.

**(Exhibit 3-Letterr to Judge Gardner dated January 9, 2025)**

4

The letter states in part as follows:

> Please be aware that someone has been removing Eldridge Hawkins' Esquire's name from case Jackets for receipt of Court Notifications on Multiple cases that we share, including this case. . . After March 2024, ALL Court notifications on this case to attorney Hawkins stopped completely without our knowledge or consent.

**(Exhibit 3-Letter to Judge Gardner dated January 9, 2025)**

We are asserting that there is unlawful interference at the Court level itself, *which is beyond our control. For example, our names being removed from case jackets and attorneys at times expressing that they cannot see our documents filed on the courts.*

*Being blocked from reviewing documents filed in the district Court after uploads and "United State" being added to which only the State and Federal Government can fully address*, we believe that the motion dismissing the plaintiff's complaint should be vacated.

## PROCEDURAL HISTORY

Plaintiff relies on the case jacket as her procedural history as if set forth at length herein.

## LEGAL ARGUMENT

### STANDARD FOR RELIEF UNDER RULE 60 (b)

### FRCP 60 (b) states as follows

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) ;
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

### POINT ONE

### THE ORDER DISMISSING PLAINTIFF'S COMPLAINT  SHOULD BE VACATED PURSUNST TO RULE 60 (b)(3)(6)

Rule 60 (b)(6) allows dismissal based on any other reason that justifies relief.  In the case at bar, there is an equitable reason under Rule 60 (b)(6) to allow the Order dismissing plaintiff's complaint to be vacated.

It has been said that "[t]he powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex ... relations and the protection of rights can demand." See Chi., Rock Island & Pac. Ry. Co. v. Union Pac. Ry. Co., 47 F. 15, 26 (C.C.D. Neb. 1891).

Here, Plaintiff's counsel did not oppose the motion based on the perceived conduct of others that led him to believe that there was no motion to oppose. **(See Exhibit 3)** This behavior is also defined as Fraud. (See Black's law dictionary p.P529, 7Ed). While the fraud that is contemplated by Rule 60(b) is fraud by an opposing party, equity allows this court to use its wide discretion and find that fraud likely occurred in this case.

Judicial discretion is said to be the "expression of equity in our merged system because it enables flexibility and ensures a more individualized justice." See F.W. Maitland, The Origin of Equity, in Equity And The Forms of Action At Common Law 1, 4-7 (A.H. Chaytor & W.J. Whittaker eds., 4th prtg. 1916). A court may choose to be somewhat lenient in the exercise of its discretion to deal with a deficiency. See, e.g., Scharf v. United States Attorney Gen., 597 F.2d 1240,1243 (9th Cir.1979); United States v. Western Elec. Co., Inc., 337 F.2d 568, 575 (9th Cir.1964); See also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A court also broad discretion to determine whether to overlook a party's failure to comply with rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.2001).

[A] motion to [a court's] discretion is a motion, is also to  its judgment; and its judgment is to be guided by sound legal principles." <u>Martin v.  Franklin Capital Corp</u>., 546 U.S. 132, 139 (2005).

It is very clear, that the plaintiff's counsel did not knowingly fail to oppose the defendants' motion to dismiss his client's complaint. Based on this the Court should vacate its order dismissing the plaintiff's Complaint.

## <u>STANDARD FOR RELIEF UNDER RULE 12 (b) (6)</u>

Motions to dismiss under Rule 12(b )( 6) are rarely granted. A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Gilligan v. Jamco Dev. Corp</u> .108 F.3d 246, (9th Cir.1997) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, (1957). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dept</u>., 901 F.2d 696, 699 (9th Cir.1988).

Under Rule 12(c), judgment will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." <u>Society Hill Civic Association v. Harris</u>, 632 F.2d 1045, 1054 (3d Cir.1980). Case 2:22-cv-06078-CCC-AME Document 62 Filed 08/05/24 Page 5 of 53 PageID: 1738

The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) Rosenau v. Unifund Corp, 539 F3d 218, 221 (3d Cir. 2008)

The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232 (1974). Moreover Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests."' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Federal Courts are consistent in their requirement that a pleading contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. Thus, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id at 555. In Ashcroft v. Igbal that Court stated that in order for a plaintiff to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "When applying the plausibility standard, a court should undertake a "two-pronged approach." Id. First, the court should identify and disregard legal conclusions not entitled to the assumption of truth. Id. Second, the court should identify and assume

9

the truth of well pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief. Id.

Moreover, because dismissal on Rule 12 (b)(6) motion are disfavored [a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell Atl. Corp. v. Twombly, 550 U.S. at 556.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957),

In lieu of dismissal a Court may grant Leave to amend should be freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment .... " Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**POINT ONE**

**PLAINTIFF PROPERLY PLED  CONSTITUTIONAL CAUSES OF ACTION AGAINST FLEX BUS COMPANY AS WELL  AS THE DRIVER**

***Violations of Plaintiff's Constitutional Rights to Freedom, Substantive Due process, and Equal Protection (Peper v Princeton,  75 NJ 55 (1978))***

Pursuant to Article 1 para 1 of the NJ Constitution:

10

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

Plaintiff alleged that she was denied of equal protection due to her Haitian National Origin, dark skin color and her prior grievance to the Bus Company about a matter of public concern. Plaintiff made clear in each Count of her complaint that she was incorporating the facts acts above and below into each Complaint count. Thus, pursuant to  Bell Atl. Corp. v. Twombly, plaintiff  gave the defendant fair notice of what her claims were, and the grounds upon which her claims rested i.e.,- denial of Equal Protection due to *Skin color, Haitian National Origin and Prior Grievance*). See Id at 550 U.S. 544, 555 (2007).

The New Jersey Supreme Court has expressed that persons can bring claims for denial of substantive and procedural due process as well as denial of their equal protection rights by private parties directly under Constitution. See Peper v Princeton, 77 NJ 55 (1978).

Thus, regardless of whether or not Grey Hound Bus Company or its employee are state entities or agents, this does not change the constitutional protection mandated by the N.J. Constitution and the Supreme Court's interpretation under Peper v Princeton,.

There can be no dispute that Peper was a private individual who sued a private university. The Court in Peper opined that any Discrimination by the private University

11

was in fact violative of State Constitutional directives. Id. In Peper, the Supreme Court

authorized said litigation to proceed under the State Constitution. Id. Thus, whatever

logic was attempted to be utilized by defendants to attempt to overrule Peper, must fail.

The Federal case relied upon by Defendant (Caldwell v KFC Corp) was a Title

VII case that does not determine the jurisdiction of the District Court to hear a N.J.

Constitution cause of action.

According to Article VI section II of the New Jersey Constitution:

> The Superior Court shall have original general jurisdiction throughout the State in all causes.

The Superior court is the only court mentioned in the entire constitution as having

original jurisdiction. Expressio unius est exclusio alterius.

This clearly means that according to the constitution itself, *only the Superior court has*

*jurisdiction over all matters throughout the stat*e.

In Peper, the court expressed the following:

> *The principle is well established that a court cannot hear a case as to which it lacks subject matter jurisdiction even though all parties thereto desire an adjudication on the merits. State v. Osborn, 32 N.J. 117, 122 (1960); Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 537 (1953); Peterson v. Falzarano, 6 N.J. 447, 454 (1951). Such jurisdiction must be granted to the court by the Constitution or by valid legislation, as it "cannot be vested by agreement of the parties." Id. Likewise, subject matter jurisdiction cannot be conferred by waiver resulting from a party's failure to interpose a timely objection to the assumption of jurisdiction. Lay Faculty Ass'n of Regional Secondary Schools of Archdiocese of Newark v. Roman Catholic Archdiocese of Newark, 122 N.J. Super. 260, supplemented 124 N.J. Super. 369 (App. Div. 1973), cert. den. 64 N.J. 153 (1973). Objection to jurisdiction of the court over the subject matter is effective whenever made. McKeeby v. Arthur, 7*

12

> *N.J. 174 (1951). Of the 12 grounds of jurisdiction alleged by plaintiff, we find that only a few are colorable.*

The other case relied upon by defendants (Cody v Fedex, A-2054-19, 2023, WL 3813622) is a case that was argued by the undersigned before the Appellate Division on behalf of his client Lenora Codey.  The Codey case does not stand for the premise that a NJ Constitutional cause of action can only be brought against persons acting only under color of law.

A review of the legal points undersigned in the Codey case demonstrates that no such issue was raised on appeal. Defense counsel is simply trying to overturn Peper v Princeton without demonstrating any proper legal authority.

Defendants are attempting to interject defendants usual bowl of sundries, such as a requirement that the cause of actions must follow the 42 USCA 1983 requirements of under color of state law ,which no such cause of action under the NJ constitution requires said proofs. The allegations  plead under Peper provided enough facts to state a claim for relief that is plausible on its face.

Here, plaintiff was thrown off the bus without being allowed to air her grievance. The bus driver told her that she recalled that she complained about her previously and told her that that was the reason why she was placed next to the toilet. She was not given back her bus fare.

Being disallowed the right to grieve and being punished and retaliated against by being forced to smell the toilet causing physical and emotional discomfort is a denial of substantive and procedural due process and denial of Equal protection.

Being thrown off the bus in a disparate fashion because she grieved is a denial of substantive and procedural due process and denial of Equal protection.

## POINT TWO

## COUNT TWO ;VIOLATIONS OF PLACES OF PUBLIC ACCOMMODATION

*Violation of Places of Accommodation NJSA 10:1-2, NJSA 10:5-1, NJSA 10:5-4.1, NJSA 10:5-12 (d) ( e)  (f ), Ptaszynski v Ehiri, 371 N.J. 333(App Div. 2004).*

Contrary to defendants, the plaintiff satisfied a claim for National Origin, race and colot Discrimination especially under N.J.S.A. 10:5-12(f). showing that she was violated. Plaintiff showed: (1). That The defendant bus company owns, operates, or manages a bus company which is a place of public accommodation; (2). That The plaintiff is a member of a protected class because she is a Black Haitian disabled female; (3).  The plaintiff was denied access to, or treated differently in, the place of public accommodation because she was forced to sit in the area of the bus that had toilet odors, Jerel-in specifically told plaintiff that she wanted plaintiff to smell the feces (4). That she was denied equal treatment or subjected to differential treatment based on the plaintiff's protected characteristic because

14

she complained and was black Haitian female. See Islam v. City of Bridgeton, 804 F. Supp. 2d 190, 200 (D.N.J. 2011). See also Holmes v Cty of Jersey City, 449 NJ. Super 600(App. Div 2020)and Ptaszynski v Ehiri, 371 N.J. 333(APP DIV, 2004). Thus contrary to Defense counsel's blanket allegation to the contrary, ***plaintiff properly and clearly plead national origin, race, color.***

The various underlined Counts to the amended complaint, also contradict defense counsel's allegation that only retaliation was plead.  Count two also clearly pled the necessary different allegations for the varied place of public accommodations qualifiers. The various classes were clearly stated. Contrary to defense counsel, all prior Counts and paragraphs **above and below** in the pleading were incorporated by reference into every other cause of action which clearly states causality of damage.

Thus, Plaintiff's complaint crossed the Rule 8(a)(2)  hurdle  because she made "either direct or inferential allegations respecting all material elements of a cause of action."  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

Based on this, defendants CANNOT show that it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim.

**Plaintiffs Cited Authority In Support**

 IT is quite obvious that Defendant's counsel is not familiar with the N.J.S.A. 10:5-12((d)(e)(f)

15

NJSA 10:5-12 (d) Applies to **<u>any person</u>** and states as follows:

> **For any person** to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has sought legal advice regarding rights under this act, shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

NJSA 10:5-12 (e ) also applies to **<u>Any person</u>** and states:

> **For any person**, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

NJSA 10:5-12 f applies to **Any agent** of a place of Public Accommodation.

> For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof, or directly or indirectly to publish, circulate, issue, display, post or mail any written or printed communication, notice, or advertisement to the effect that any of the accommodations, advantages, facilities, or privileges of any such place will be refused, withheld from, or denied to any person on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, disability, liability for service in the Armed Forces of the United States or nationality of such person, or that the patronage or custom thereat of any person of any particular race, creed, color, national origin, ancestry, marital

16

NJSA 10:5-4- Accords equal treatment by places of accommodations to persons regardless of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, liability for service in the Armed Forces of the United States, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments,

Plaintiff made clear that her allegations were based on her color, race and National Origin. If that is unclear, plaintiff  at this early stage is allowed to Amend her Complaint. Plaintiff However incorporated all counts **above and below** which allowed all to understand that she was alleging discrimination based on color, race and National Origin.

Plaintiff would not have specifically identified her, *color, her race and National Origin* if they were not germane to her cause of action.

NJSA 10:5-3-Plaintiff erroneously cited NJSA 10:5-4 instead of NJSA 10:5-3 that requires that the NJLAD requires liberal construction.

Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 853 A.2d 288 (App. Div. 2004):

- Ptaszynski stands for the principle that public employees are immune from civil liability under the New Jersey Tort Claims Act ONLY (NJTCA) when their conduct is reasonable and falls within discretionary functions.
- Ptaszynski also stands for the principle that each individual employee Agent is a place of public accommodation, not just the building or the entity.

Here, Bus Driver Jerl-in was a place of public accommodation not just Grey Hound.

**POINT THREE**

**COUNT THREE: COUNT THREE OF PLAINTIFF'S COMPLAINT**

**Reckless, Wanton, Intentional Infliction of Severe Emotional Distress**

To establish a cause of action for intentional infliction of Emotional Distress in New Jersey, a plaintiff must establish four elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was "so severe that no reasonable man could be expected to endure it." Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988)

The defendant's conduct must be "done with the intent to do the act and to produce the emotional distress, or in deliberate disregard of a high degree of probability that emotional distress will follow." Buckley, 111 N.J. at 366. Additionally, "the conduct must be `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (citing Restatement (Second) of Torts § 46 comment d.)

Plaintiff stated that Jerel-in acted intentionally by placing her near to the toilet for the specific intent to cause her to smell the feces. An Agent of an entity charged with accommodating passengers inflicting such outrageous treatment is beyond the bounds of decency. Being forced to smell the feces and told that the smell of feces was intended to punish her (olfactorily) caused severe emotional distress that no reasonable person should be forced to endure it.

Human waste has been considered particularly offensive so that courts have been especially cautious about condoning conditions that include an inmate's proximity to it. McBride v. Deer, 240 F.3d 1292 (10th Cir. 2001)

In LaReau v. MacDougall, the Second Circuit held that housing a prisoner in a cell with a malfunctioning toilet that emitted foul odors and exposed him to human waste violated the Eighth Amendment, 473 F.2d 974 (2d Cir. 1972)

The fact that the bus driver wanted plaintiff to smell the feces and placed plaintiff in the area that caused plaintiff to smell it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

## COUNT FOUR

## POINT FOUR OF THE PLAINTIFF'S COMPLAINT

### Breach of the Implied Covenant of Good Faith and Fair Dealing, Violation of Equal Protection, Substantive and Procedural Due Process

"[T] he breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to `have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Wade v. Kessler Inst., 172 N.J. 327, 345, 798 A.2d 1251, 1262 (2002). Good faith involves acting without malice.  Odom v Wayne Co, 482 Mich 459, 461; 760 NW2d 217 (2008), citing Ross v Consumers Power Co. (On Rehearing), 420 Mich 567; 363 NW2d 641 (1984).

Although the defendant honored plaintiff's ticket, it was done in a manner that injured plaintiff's right to enjoy the fruit of her contract because the driver told plaintiff that she was being placed next to toilet so that she could smell the feces. Wanting plaintiff to smell the feces was malicious and an act of bad faith.

Violation of Equal Protection, Substantive and Procedural Due Process

Plaintiff adequately argued denial of Equal protection and violation of substantive and procedural due process under point one.

Defendants defend against the allegation of denial of Equal protection and Substantive Due Process by stating that they are private entities. This is not so.

The case of Blum v. Yaretsky, 457 U.S. 991 (1982), Clarified that *extensive regulation and significant state involvement* in the specific conduct challenged allows a private actor to act under color of law.

Interstate bus companies such as Greyhound act under color of law because they are subjected to extensive regulation and significant government involvement by the Federal Motor Carrier Safety Administration (FMCSA) and subject to federal safety, licensing, and anti-discrimination rules.

For example, a 2015 Federal Motor Carrier Safety Administration Registration summary reads as follows:

> MCSA renews **Greyhound Lines**, Inc.'s (Greyhound) exemption which allows the placement of video event recorders at the top of the windshields on its buses, and within the swept area of the windshield wipers. Greyhound may continue to use the video event recorders to **increase**

**safety** through identification and remediation of risky driving behaviors such as distracted driving and drowsiness; enhanced monitoring of passenger behavior; and enhanced collision review and analysis. The Agency has concluded that granting this exemption renewal will maintain a **level of safety** that is equivalent to or greater than the level of **safety** achieved without the exemption. However, the Agency requests comments and information on the exemption, especially from anyone who believes this standard will not be maintained

**(See Exhibit 1)**

There is Federal Oversight of Greyhound Lines. The DOT enforces Grey Hound's accessibility standards under the Americans with Disabilities Act (ADA), requiring Greyhound to accommodate passengers with disabilities.

For example, there is a Federal Agreement whereby Grey Hound was required to comply with  Accessibility services. A passenger Guide was published.

**Guide for Passengers: Accessible Bus Service Under the Greyhound Agreement**

Greyhound promised to improve its accessible bus service as part of a settlement agreement with the Department of Justice. The agreement resolves a series of complaints filed under the Americans with Disabilities Act. This guide explains how you can get accessible bus service under the agreement between now and October 1, 2001. As of that date new Department of Transportation regulations will require Greyhound to provide accessible, lift-equipped service on demand with 48 hours' notice. Greyhound is starting to put more accessible buses on the roads and to train Greyhound's bus drivers and other workers to provide accessible bus service (for example, through the operation of lifts, other boarding devices, and disability awareness). Until all the buses are in service and all the drivers are trained, Greyhound will not be able to meet all requests for accessible bus service. By April 1, 2000, however, Greyhound will guarantee lift-equipped bus service to and from all of its destinations, except in a very limited set of circumstances. For accessible bus services, please call the **Greyhound ADA Hotline**: 1-800-752-4841 or 1-800-345-3109 (TDD). Call at least 48 hours (two days) before you want to travel. Greyhound may need to call you back to make final arrangements.

21

**(See Exhibit 2)**

The U.S. Supreme Court case of <u>Lugar v. Edmondson Oil Co.,</u> 457 U.S. 922 (1982), is the leading authority explaining when a private corporation regulated by the government can be deemed to act under color of law.

In <u>West v. Atkins,</u> 487 U.S. 42 (1988), a private physician under contract with the state to provide medical care to inmates was held to be acting under color of law. In <u>Brentwood Academy v. Tennessee Secondary School Athletic Ass'n</u>, 531 U.S. 288 (2001): A private athletic association was found to be a state actor due to pervasive entwinement with public institutions.

Here, the excessive government entanglement and oversight by the federal Government over Grey Hound satisfies the criterion of acting under color of law.

Thus, because plaintiff has adequately stated claims for breach of the covenant of good faith and fair dealing and showed that the defendants were acting under color of law when they denied her of Equal Protection, Substantive and Procedural Due Process she has stated claims upon which relief may be granted.

**POINT FIVE**

***COUNT FIVE***

***Retaliation, Violation of 49 CFR § 374***

**<u>Retaliation</u>**

Plaintiff properly plead retaliation under the NJLAD. The LAD makes it an unlawful

22

practice "to take reprisals against any person because that person has opposed any practices or acts forbidden under this Act." N.J.S.A. 10:5- 12(d).

To establish a prima facie case of discriminatory retaliation, a plaintiff must demonstrate that: (1) [she] engaged in a protected activity known by the employer; (2) thereafter , the bus driver as agent for her employer- place of public accommodation unlawfully retaliated against [her]; and (3) [her] participation in the protected activity caused the retaliation." Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445, 577 A. 2d 17 (App.Div.1990); Wrighten v. Metropolitan Hospitals  Inc., 726 F.2d 1346, 1354 (9th Cir.1984).

Here, plaintiff engaged in a protected activity by complaining to Grey Hound about her prior mistreatment by the driver  based on her perception that he previously mistreated her based on her skin color and her Haitian National Origin. Plaintiff's national Origin is quickly detected from her accent as soon as she starts speaking.

The driver thereafter as an agent of his employer retaliated against the plaintiff based on the prior complaint by telling her she was placed in a seat that would allow her to smell feces as punishment for her prior protected activity. Thus plaintiff satisfied retaliation under N.J.S.A. 10:5- 12(d). Based on this, plaintiff has stated a claim upon which relief may be granted which prevents dismissal of her case.

**POINT SIX: DEFENDANTS ARE NOT ENTITLED TO SANCTIONS**

**<u>Violation of 49 CFR  § 374</u>**

Courts have already made clear that citizens may use federal statutes to bring claims under general anti discrimination statutes. <u>See</u> <u>Cerqueira v. American Airlines, Inc.</u>, 520 F.3d 1 (1st Cir. 2008). (49 U.S.C. § 40127(a) is  an appropriate vehicle to bring a claim under a general anti-discrimination statute such as 42 USC 1981)

In the case at bar, plaintiff cited 49 CFR  § 374.101 as a vehicle that brought the discrimination claims against the defendants under the general provisions of the NJLAD, especially NJSA 10:5-4. Plaintiff stated in the first paragraph of Count five that she was incorporating all aforesaid paragraphs and incorporating them into Court Five of the complaint.

In <u>Cerqueira,</u> the plaintiff, who was a passenger of Middle Eastern descent, was removed from a flight based on alleged security concerns. He sued under various theories, including 49 U.S.C. § 40127(a), which prohibits discrimination by air carriers.

The First Circuit in the <u>Cerqueira,</u> case, acknowledged that 49 USC § 40127(a) provides a private right of action for individuals alleging discrimination in air transportation. The court analyzed whether the airline's conduct violated this statute and considered it alongside other federal claims.

Cerqueira, confirms that regulatory provisions such as § 40127(a) can serve as a substantive basis for a discrimination claim in federal court, particularly when the **alleged conduct implicates race, national origin, or other protected categories.**

Similarly, 49 CFR § 374.101  governs interstate passenger carriers. Like 49 U.S.C. § 40127(a), it prevents discrimination based on race, color, creed, or national origin in federally regulated transportation sectors. Courts have held that regulations implementing statutes with civil rights implications may be enforceable via 42 USC§ 1983 or implied civil rights if the statute itself protects individual rights (Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). NJSA 10:4-5 that was plead here protects the civil rights of individuals.

A comparison of the two provisions show:

**49 CFR § 374.101**  has specific and mandatory language which states:

> "No motor carrier of passengers… shall operate a motor vehicle… on which the **seating of passengers** is based upon race, color, creed, or national origin."

**49 U.S.C. § 40127(a):**

> An air carrier or foreign air carrier may not **subject a person** in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry.

A passenger is a person. The language of both provisions are similarly  clear, mandatory, and rights-focused.

Just like §49 USC 40127(a) that supports a private claim due to its civil rights nature, 49 CFR § 374.101 affords similar protection. Thus 49 CFR § 374.10 should be

treated similarly, especially when the discriminatory conduct implicates constitutional rights.

There is no dispute that Courts recognize an implied private right of action if a regulation is intended to benefit individuals and is sufficiently specific. See Cort v. Ash, 422 U.S. 66, 78 (1975).

The Supreme Court listed four factors to guide judicial determination of whether a private right of action can be implied from a federal statute. The four factors are as follows: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny an implied remedy; (3) whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. Id.

As shown her, our Plaintiff is a member of a class for whose special benefit 49 CFR § 374.101 was enacted because she is brown skinned and of Haitian National Origin. There is an indication of legislative intent to create or deny an implied remedy because 49 CFR § 374.101 was clearly enacted to protect individuals. Congress intended private enforcement, either directly or by implication by the words used in the provision. Thus, the sole purpose is to eliminate discrimination from public Accommodations which is a function traditionally relegated by State Law.

26

Based on this, plaintiff has stated adequate facts that allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged and that 49 CFR § 374.10 applies to her matter.

## **CONCLUSION**

Based on all the above, the Order of dismissal in this case should be vacated and defendants' motion to dismiss denied.

/s/ Cecile D. Portilla
CECILE D. PORTILLA, ESQUIRE
*On the Brief*

**Dated: November 4, 2025**