<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARTULDE POINT DU JOUR,<br><br>        Plaintiff,<br><br>        v.<br><br>FLIX BUS SE d/b/a GREYHOUND BUS COMPANY SMACK JERI-IN, HEAD DOE, JOHN DOES (1-10), HARRY DOES (1-10),<br><br>        Defendants. | Case No. 2:25-cv-02601 (BRM) (SDA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Flix Bus SE d/b/a Greyhound Bus Company ("Flix Bus"), Jerlyn Smack ("Smack"),[1] (collectively "Defendants") Motion to Dismiss the Amended Complaint. (ECF No. 21.) Plaintiff Artulde Point Du Jour ("Du Jour") filed a brief in opposition. (ECF No. 33.) Defendants filed a timely reply brief in support of their motion. (ECF No. 35.)

Having reviewed and considered the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED** and all Du Jour's claims are **DISMISSED WITH PREJUDICE**.

---

[1] The fictious defendants are twenty unknown employees of Flix Bus who allegedly "authorized, directed, approved and supervised" the allegedly unlawful actions of the named defendants.

## I.   BACKGROUND

### A.   Factual Background

On June 22, 2024, Du Jour boarded a Greyhound Bus with a ticket to the hospital in New York, where she works as a nurse. (ECF No. 10 at 2.) Despite being assigned a specific seat, Du Jour chose to sit in a different seat in the third row, to avoid sitting next to a bathroom which had not been properly ventilated. (*Id.*) However, Du Jour had a contentious relationship with the bus driver "Smack," who had refused to allow Du Jour to board a Greyhound Bus two years prior despite Du Jour's ticket, resulting in a complaint to Flix Bus. (*Id.* at 3.) Despite the bus not being full, Smack demanded Du Jour use her assigned seat, which Du Jour alleges was intended as retaliation for Du Jour's earlier complaint. (*Id.*) The two got into a heated verbal altercation, during which Smack publicly humiliated Du Jour. (*Id.*)

### B.   Procedural Background

Du Jour first brought this case in Superior Court of New Jersey, Law Division on January 21, 2025, alleging claims against the individual defendants and Greyhound Bus Company, a brand name under the Flix Bus umbrella. (ECF No. 1 at 11.) Defendants removed the case to federal court under diversity jurisdiction on April 10, 2025. (*Id.* at 1.) On June 3, 2025, following a conference with the magistrate judge, the Court issued an order for Du Jour to file an amended complaint in compliance with Rule 11(c)(3) or file a letter setting forth why the initial complaint complied with the Rule. (ECF No. 9.) Du Jour elected to file the Amended Complaint on June 30, 2025. (ECF No. 10 at 2.) This Amended Complaint complied with Rule 11(c)(3) and altered several factual allegations. (*Id.*) Though Defendants had already answered the initial complaint, on July 31, 2025, they requested Leave to File a Motion to Dismiss Du Jour's Amended Complaint (ECF No. 15), which the Court granted on August 22, 2025 (ECF No. 20). Pursuant to that Order,

Defendants filed a Motion to Dismiss ("Motion") on September 19, 2025. (ECF No. 21.) Du Jour therefore had until October 6, 2025, to file an opposition to Defendants' Motion—but she never filed a response. On October 8, 2025, the Court provided Du Jour with an additional five days to file her opposition before the Motion would be considered unopposed. (ECF No. 22.) Du Jour still failed to oppose the Motion, and on October 21, 2025, the Court considered Defendants' unopposed Motion and dismissed the case. (ECF No. 23.)

On November 4, 2025, nearly a month after Du Jour's opposition was due, Du Jour filed a Motion to Vacate the Order dismissing the case. (ECF No. 24.) The Court granted Du Jour's motion on April 16, 2026, reopening the case to permit Defendants' Motion to be decided on the merits. (ECF No. 32.) Plaintiff thereafter filed an opposition to Defendants' Motion. (ECF No. 33.) Defendants filed a reply brief, placing this matter before the Court. (ECF No. 35.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual

3

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out

"sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.    DECISION

Du Jour alleges five causes of action stemming from her disagreement with Smack. (ECF No. 10 at 4–7.) First, she alleges Smack and Flix Bus violated her rights to "freedom, substantive due process, and equal protection" because the Defendants' conduct "deprived [Du Jour] of her entitlement, to ride the bus like everyone else." (*Id.* at 3–4.) Second, Du Jour cites New Jersey Civil Rights statutes that she claims were violated as a consequence of the alleged conspiracy of defendants to "subject[] plaintiff to a punitive foul swelling [sic] environment" and thus allegedly denying her the same rights afforded to "non-complaining, non-handicapped, non[-]Haitian[,] female commercial ticket holders[.]" (*Id.*) Third, Du Jour alleges that requiring her to sit in her assigned seat, given the circumstances, amounted to intentional infliction of emotional distress.

(*Id.* at 5.) Fourth, the Amended Complaint asserts that Du Jour was "owed a high degree of care" in exchange for purchasing a ticket, which was violated by Smack who "did not like [Du Jour] exercising her freedom of speech and right to grieve, and equal protection of constitutional rights" and punished her by requiring her to use her seat near the restroom. (*Id.*) Finally, according to Du Jour, the restroom on this particular Flix Bus gave off a "strong offensive odor" in violation of 49 C.F.R. § 374.313 (b)'s regulations; the Amended Complaint also maintains that this regulation provides Du Jour with a private right of action against Smack and Flix Bus for allegedly retaliating against her for complaining about the condition of the bathroom. (*Id.* at 5.)

Defendants move to dismiss all these claims, arguing: (1) Du Jour's claims of constitutional violations are barred because neither Smack nor Flix Bus are government actors, and Du Jour cannot allege any facts which would fulfill the state action requirement; (2) Flix Bus did not violate its duties as a place of public accommodation under New Jersey law because those laws protect from discrimination on the basis of certain categorizations such as race or sex—but Du Jour is alleging discrimination on the basis of her complaints to Flix Bus, not discrimination against a protected category; (3) Du Jour's claim for intentional infliction of emotional distress must fail because although being seated next to an ill-smelling bathroom for the length of a bus ride is unpleasant, it does not rise to the level of extraordinary, unendurable stress required for an intentional infliction claim; (4) Du Jour's claim for a violation of the implied warranty of good faith and fair dealing fail because even under her telling, Du Jour was merely instructed to sit in the seat assigned to her under the contract and was, therefore, not deprived of the value she bargained for; and (5) the federal passenger-carrier regulations do not provide Du Jour a private right of action. (*Id.* at 8, 11, 14, 17.)

### A.     Du Jour's Constitutional Rights Were Not Violated.

Du Jour's primary grievance is her belief that Flix Bus and its employees conspired to interfere with her constitutional rights such as "freedom, substantive due process, and equal protection." (ECF No. 10 at 4–7.) Defendants find this allegation perplexing because they are not state actors and were not acting as agents of any government at the time of their dispute with Du Jour. (ECF No. 21 at 12.) Accordingly, defendants argue it is therefore impossible for their dispute, no matter how acrimonious, to implicate Du Jour's constitutional rights.

A constitution governs the relationship between the government and the governed. The purpose of the constitution is primarily to codify what powers the government is expected to deploy on behalf of the citizens and the limits of the government's powers—the things it may not do to those under its jurisdiction. *State v. Mollica*, 554 A.2d 1315 (1989) ("[A] state constitution ordinarily governs only the conduct of the state's own agents or others acting under color of state law"). There are some constitutional provisions which regulate the conduct of private actors, namely the Thirteenth Amendment, but those provisions are vanishingly rare. *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 832 (1983) (holding that the "Thirteenth Amendment . . . constitutionally can and does protect [the right to travel and the right to be free of racial violence] from interference by purely private conspiracies") (interpreting *Griffin v. Breckenridge*, 403 U.S. 88 (1971)).[2] However, the rights to personal liberty, substantive

---

[2] The "right to travel" here refers to the right of "a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State," it is not a right to access to a specific vehicle or method of transport. *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Pointedly, any argument that a parties' right to travel is infringed based on loss of access to a vehicle would be "frivolous," and for that reason the Court will not permit any attempt to amend the complaint based on such a right.

due process, and equal protection are constitutional limitations "directed at the State[]," meaning these rights "can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (holding the Fourteenth Amendment's protections of equal protection and substantive due process apply only to state actors).

Although this is the common understanding of the role of the U.S. Constitution, it is not universal. The New Jersey Constitution "not only secure[s] [certain] [rights] from interference by governmental or public bodies, but under certain circumstances from the interference by [private actors] as well." *Comm. For A Better Twin Rivers v. Twin Rivers Homeowners' Ass'n*, 929 A.2d 1060, 1071 (N.J. 2007). For this reason, New Jersey courts have held that for some rights such as "free speech and assembly," a party may allege a constitutional claim, "[e]ven in the absence of state action." *Id.*

Du Jour alleges that her constitutional claims, under N.J.S. Const. Art. 1, ¶¶ 1, 5, and 18, each fall under the category of claims which may be brought against private actors.[3] (ECF No. 33 at 3 (citing *Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465 (N.J. 1978)).) This is incorrect. Although New Jersey's free speech protections do not require state action, and the Court will address Du Jour's free speech claim *infra*, this is relatively unique among New Jersey constitutional provisions and does not apply to Du Jour's other causes of action. *State v. Watson*, 298 A.3d 1049, 1063 (N.J. 2023) (applying the state action requirement to other constitutional claims). For example, Du Jour brings a due process claim against Flix Bus, a private entity,

---

*See e.g. Linden Police Dep't v. Baquero*, Civ. A. No. 24-7924, 2026 WL 663816, at *3 (D.N.J. Mar. 10, 2026) (collecting cases which find claims based on the right to travel frivolous).

[3] Du Jour concedes the Defendants are private actor, but claims they may be sued under the New Jersey Constitution regardless because they provide public accommodations. (ECF No. 33 at 2–3.)

however "the due process guarantee of Article I, Paragraph 1 of the New Jersey Constitution . . . protects against arbitrary and unjust governmental action," not against the actions of purely private actors. *State v. Thomas*, 269 A.3d 487, 508 (N.J. Super. Ct. App. Div. 2022) (quoting *State v. Njango*, 255 A.3d 1164, 1167 (N.J. 2021)). Because due process is the quintessential protection against arbitrary government action, "behavior by private actors . . . does not implicate due process concerns." *Watson*, 298 A.3d at 1063 (discussing the due process rights contained in N.J.S. Const. Art. 1, para. 1) (quoting *State v. Chen*, 27 A.3d 930, 936 (N.J. 2011)).

The equal protection claim fails for the same reason. "It is axiomatic that an equal protection claim under both the United States and New Jersey Constitutions requires state action." *Garden State Equal. v. Dow*, 82 A.3d 336, 359 (N.J. Super. Ct. Law Div. 2013) (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972)). Du Jour also argues that even if state action were required, that requirement is satisfied here because Defendants are subject to state and federal regulations and therefore "acted under color of law" when they discriminated against her. (ECF No. 33 at 9). This argument is misplaced; the fact that the Flix Bus provides services to the public and is regulated by government agencies for that purpose does not render it a state actor. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 189 (3d Cir. 2000) (holding that "appellants' allegations of state action are insufficient [because][the] [s]tate regulation and the CCC's authorization of casino activities do not transform the casinos into state actors"). Du Jour's claims for violations of her due process and equal protection rights are therefore legally infirm and must be dismissed.

This leaves Du Jour's free speech claim as the only remaining constitutional claim. Although the free speech protections enshrined in the New Jersey Constitution are "broader than practically all others in the nation," it does not create a free-floating cause of action for any harm

9

tangentially related to an act of speech as Du Jour suggests. *Green Party of New Jersey v. Hartz Mountain Indus., Inc.*, 752 A.2d 315, 325 (N.J. 2000). Under New Jersey law, a private entity may only be liable for a violation of free speech rights where they use their ownership of a traditionally public area to suppress certain types of speech. *State v. Schmid*, 423 A.2d 615, 622 (N.J. 1980) (considering the impact of an "invitation to the public to use the property" to the free speech rights of those who were deemed trespassing as a result of their picketing). To balance the public's right to speech with a private actor's property rights, New Jersey courts employ the three-pronged *Schmid* test, which considers:

> (1) the nature, purposes, and primary use of such private property, generally, its "normal" use, (2) the extent and nature of the public's invitation to use that property, and (3) the purpose of the expressional activity undertaken upon such property in relation to both the private and public use of the property.

*New Jersey Coal. Against War in the Middle E. v. J.M.B. Realty Corp.*, 650 A.2d 757, 771 (N.J. 1994) (summarizing the *Schmid* factors).

Applying these factors, Defendants were not plausibly positioned to impair Du Jour's speech rights. The primary nature and purpose of a bus is for transportation; it is neither a public forum or a gathering place. Nor does the public possess an open invitation to use the bus for its own purposes. The public's access to a bus is wholly contingent upon their status as customers and the terms within the contract embodied by a ticket. Finally, use of the bus to relitigate prior complaints addressed to the company is, at best, immaterial to any expected use of the property. As the Third Circuit has held, where the "service is not sufficiently 'devoted to public use'" there can be no violation of free speech rights associated with restricting access to the service. *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (quoting *Schmid*, 423 A.2d at 622).

"Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile." *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014). Where there are "no new factual allegations [that] could result in a viable claim . . . amendment would be futile." *In re Gilbert*, 120 F.4th 114, 125 (3d Cir. 2024), *as amended* (Nov. 1, 2024) (quoting *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 249–50 (3d Cir. 2023).) Here, Du Jour's constitutional allegations are infirm on a fundamental, legal level and there is no set of facts she could plausibly allege which would render Flix Bus or its employees state actors or sufficiently devoted to public use to implicate her constitutional rights. "An amendment is futile if the amended complaint would not survive a motion to dismiss." *Cnty. of Hudson v. Janiszewski*, 351 F. App'x 662, 666 (3d Cir. 2009); see also *Fonti v. Health Pros. & Allied Emps.*, Civ. A. No. 13-4231, 2015 WL 1523834, at *3 (D.N.J. Apr. 2, 2015) ("Reasons a court could deny leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility."). Accordingly, Du Jour's constitutional claims—what the Court refers to as Du Jour's first claim—are **DISMISSED WITH PREJUDICE**.

### B. Alleged Discrimination Against Those Who File a Complaint Does Not Implicate Public Accommodation Protections.

Du Jour also brings a claim alleging she was discriminated against in a place of public accommodation. (ECF No. 10 at 4.) She offers a single phrase in support of this suggestion; namely, Du Jour alleges she was treated differently from "non-complaining, non-handicapped, non[-]Haitian[,] female commercial ticket holders." (*Id.*) There are no specific allegations beyond this conclusory statement regarding how this alleged disparate treatment was connected to her race or any other protected category. (*Id.*)

To state a claim for discrimination by a place of public accommodation, Du Jour must allege facts sufficient to plausibly show: "(1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *Islam v. City of Bridgeton*, 804 F. Supp. 2d 190, 200 (D.N.J. 2011). "The focal issue is whether defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of [their] protected status." *Turner v. Wong*, 832 A.2d 340, 356 (N.J. Super. Ct. App. Div. 2003).

Stated simply, it is not sufficient for Du Jour to merely rattle off a list of protected categories she happens to fall under. Instead, she must demonstrate that those protected categories animated the disparate treatment she allegedly experienced. *Wong*, 832 A.2d at 356.

Du Jour alleges no facts from which the Court could draw such a conclusion. Rather, Du Jour alleges the opposite, that her treatment stemmed from "retaliation for [Du Jour's] right to grieve and complain." (ECF No. 10 at 3.) Similarly, the genesis of this altercation is not alleged to stem from any desire by Defendants to discriminate against protected categories, rather Du Jour is clear that this is a personal grudge by Smack who "had a run in with [Du Jour], about two years prior" to the current dispute. (*Id.* at 3.)

Du Jour's cited authority, *Ptaszynski v. Uwaneme*, is not contrary to the Court's decision. 853 A.2d 288 (N.J. Super. Ct. App. Div. 2004). *Ptaszynski* dealt with the issue of whether a municipal police department was "a place of public accommodation for purposes of [the Law Against Discrimination.]" *Id.* at 297. The Appellate Division found that, although the police force was not listed as a place of public accommodation in N.J. Stat. Ann. § 10:5–5, the Law Against Discrimination is to be construed "broadly . . . [and] are not limited to those listed in the statute." *Id.* at 296.

12

But the broad definition of public accommodation is irrelevant here for two reasons. First, Defendants are a "public conveyance," and are therefore a public accommodation by statute. N.J. Stat. Ann. § 10:5–5 (l). Second, and more to the point, Defendants have never challenged their status as a public accommodation. (*See generally* ECF No. 21.) Rather, they object to Du Jour's attempt to recategorize a personal dispute with Smack as indicative of race, gender, or ability-based animus for the purpose of shoe-horning a civil rights claim into this case. (*Id.*) In that context, Du Jour's repeated emphasis that Defendants are a public accommodation does nothing to rescue her claim. (ECF No. 33 at 12–15.)

Although Du Jour's claim of discrimination is not legally invalid, her factual representations to the Court are deeply at-odds with the requirements of her claim. For Du Jour to be able to state a claim at this juncture, she must not only allege additional facts relating her alleged poor treatment to a protected category, but she must also retract her statements which contradict this explanation—and the Court must indulge her by pretending the initial, contradictory explanation was never alleged. (ECF No. 10 at 2.) This is a classic instance where a plaintiff has "plead[ed] herself out of court." *Jean-Francois v. United Airlines, Inc.*, Civ. A. No. 2:25-12342, 2026 WL 948210, at \*10 n.9 (D.N.J. Apr. 8, 2026). Because "[a]llegations in a complaint are binding admissions," even where a claim is not facially invalid, it can nevertheless be rendered futile to amend where a plaintiff "alleges facts which show she has no claim, even though she was not required to allege those facts." *Id.* (quoting *Gutierez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997)) (cleaned up). Accordingly, Du Jour's second claim is **DISMISSED WITH PREJUDICE**.

    **C.**     **The Alleged Conduct of Defendants Does Not Rise to the Level of Intentionally Inflicting Severe Distress.**

The third count in Du Jour's complaint is that the Defendants collectively acted through "their agents and aiders and abettors" to inflict severe and unendurable "olfactory punishment" on Du Jour. (ECF No. 10 at 5.) More specifically, Du Jour alleges that she purchased a seat near the bathroom and that being made to sit in her assigned seat was "sufficient to inflict severe emotional distress . . . any reasonable person . . . would not be able to endure." *Id.*

There are four elements to intentional infliction of emotional distress:

> (1) that the defendants acted intentionally or recklessly, both in doing the act and in producing emotional distress;
> (2) that the defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency;
> (3) that the defendants' action were the proximate cause of the emotional distress; and
> (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it.

*Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Aly v. Garcia*, 754 A.2d 1232, 1236–37 (N.J. Super. Ct. App. Div. 2000). "[T]he court decides whether as a matter of law such emotional distress can be found . . . ." *See Buckley*, 544 A.2d at 864.

The nature of Du Jour's allegations exclude the possibility of severe emotional distress. Du Jour's primary complaint is that she was made to sit in her own assigned seat. (ECF No. 10 at 5.) That cannot conceivably be considered "beyond all bounds of decency" given that Du Jour impliedly consented to sitting near the bathroom by not purchasing a different seat. *Mardini*, 92 F. Supp. 2d at 384. The fact that the bathroom did not have a pleasant odor is not wanton cruelty on the part of Defendants.

Du Jour also passingly complains about statements made by Smack during their argument about whether Du Jour was permitted to change seats. (ECF No. 10 at 3.) According to Du Jour, Smack demanded she return to her assigned seat because Smack wanted her to "smell the feces" from the bathroom. (*Id.*) This colorful comment falls short of the kinds of "atrocious [conduct,] utterly intolerable in a civilized community" required for a claim of intentional infliction of emotional distress. Sufficiently atrocious conduct involves acts of extraordinary, deliberate cruelty, such as a doctor lying to parents in order to convince them their child is dying of cancer or a neighbor rallying a lynch mob to the door of the plaintiff in order to threaten them into fleeing town. *See Hume v. Bayer*, 428 A.2d 966, 968 (N.J. Super. Ct. Law Div. 1981) (collecting examples of intentional infliction of emotional distress). It does not extend to mere unkind words uttered in the heat of a disagreement. *Liu v. Robert Wood Johnson Univ. Hosp. Inc.*, Civ. A. No. 24-8713, 2025 WL 1793787, at *8 (D.N.J. June 30, 2025) (holding that liability for intentional infliction of emotional distress "does not extend . . . to mere insults . . . the limited scope of this tort tolerates many kinds of unjust, unfair[,] and unkind conduct.").

Although "[a]n intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss," the Court cannot imagine a set of facts that might demonstrate extreme and outrageous conduct on the part of Defendants—even when accepting all Du Jour's allegations as true and applying the liberal pleading standards of Rule 8. *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 339 (D.N.J. 2006). The crux of Defendants' allegedly wrongful conduct, a customer being asked to sit in the seat the customer purchased, is not unreasonable let alone atrocious. (ECF No. 10 at 5.) "Because th[is] dismissal is based on the facts alleged by Plaintiff . . . rather than any insufficiency in the detail of h[er] pleadings, any further amendment of the Complaint would be futile." *Davidson v. Corr. Med. Servs., Inc.*, Civ. A. No. 08-3580, 2010 WL

324449, at *9 (D.N.J. Jan. 19, 2010) (citing *In re Burlington Coat Factory Litig.,* 114 F.3d at 1434). Accordingly, Plaintiff's claims will be **DISMISSED WITH PREJUDICE.**

**D.     Requiring Du Jour to Abide by the Terms of Her Contract Did Not Violate the Implied Covenant of Good Faith and Fair Dealing.**

Du Jour further alleges that, by being required to sit in the seat she purchased, Defendants violated the implied covenant of good faith and fair dealing, which New Jersey law holds is a part of every contract. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1256 (N.J. 2002) ("Every contract contains an implied covenant of good faith and fair dealing.") Claiming that being asked to uphold one's end of a contract is a violation of that same contract is a self-defeating argument that borders on frivolous. "[T]he implied covenant of good faith and fair dealing cannot override an express [term of the contract.]" *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 586 (N.J. 1997). Du Jour's fourth claim must therefore also be **DISMISSED WITH PREJUDICE**.

**E.     The Federal Motor Carrier Safety Regulations Provide no Private Cause of Action.**

Finally, Du Jour alleges "Defendant[s] violated 49 C.F.R. § 374.313(b)" because the restroom was not sufficiently maintained and had an "offensive odor." (ECF No. 10 at 6.) Defendants object, arguing that 49 C.F.R. § 374, the Federal Motor Carrier Safety Regulations, does not provide a private right of action by which Du Jour may seek damages. Du Jour argues that the regulations contain a private right of action, citing *Cort v. Ash*, 422 U.S. 66 (1975).

Defendants are correct. "Neither the Federal Motor Carrier Safety Regulations nor the Federal Motor Carrier Safety Act creates a private cause of action." *Ware v. Transp. Drivers, Inc.*, 30 F. Supp. 3d 273, 276 (D. Del. 2014) (citing *Lipscomb v. Zurich Am. Ins. Co.,* 2012 WL 1902595 (E.D.La. 2012)); *see also Kube v. New Penn Motor Exp., Inc.*, 865 F. Supp. 221, 234 (D.N.J. 1994) (same). Accordingly, Du Jour's fifth claim must be **DISMISSED WITH PREJUDICE**.

## IV.    CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED** and all claims within Du Jour's Amended Complaint (ECF No. 10) are **DISMISSED WITH PREJUDICE**. An appropriate order follows.


**Date: July 27th, 2026**                    */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**